```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| SARA ROSA ROJAS,<br><br>**Plaintiff(s)**<br><br>      v.<br><br>NOGAMA CONSTRUCTION CORP.,<br><br>**Defendant(s)** | **CIVIL NO.** 09-1149 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court are Nogama Construction Corporation's Motion for Judgment as a Matter of Law and Motion for New Trial and/or *Remittitur* Pursuant to Rule 59 of the FRCP (Docket No. 104).

**PROCEDURAL BACKGROUND**

On November 18, 2008 Roberto Rosa Rojas (hereinafter "Roberto"), an employee of the Puerto Rico Aqueduct and Sewer Authority (hereinafter "PRASA"), was charged with transporting several chlorine tanks to and from the storage and treatment areas of one of PRASA's water treatment plants. He would use a fingerlift to carry out this duty.

In the chlorine room, where Roberto was to deposit some of the chlorine canisters, there was a hole that had recently been opened during construction work for the ongoing modernization of the plant. The 3' x 3' hole had been opened by Nogama Construction Corporation (hereinafter "Nogama") on October 10, 2008 at the request of PRASA. Nogama had been hired by PRASA for the plant improvements, and the hole was part of the efforts that were deemed necessary for the installation of a plug below the chlorine room. The hole led to a 40 foot drop into a water treatment tank. Nogama covered the hole with a piece of plywood that had been spray painted red with the warning "Don't stand here". On top of the plywood lay a six foot ladder wrapped in orange safety mesh. These safety measures, or the like, are referred to in the construction business as a "muñeco".

On November 11, 2008, once Nogama finished its work in the area, it surrendered control of the chlorine room to PRASA. Nogama left the muñeco in place.

One week after Nogama left the area, Roberto disappeared after setting off to move the chlorine canisters on November 18, 2008. He was last seen that morning when he came into the office and was charged with the task. Later in the day, a PRASA employee found Roberto's fingerlift, engine on, parked near the hole in the chlorine room. The hole had been left uncovered, and

Roberto was nowhere to be seen. A search for Roberto ensued, and ended at approximately 10:00 PM, when his remains were found by divers at the bottom of the water treatment tank below.

The jury found Defendant Nogama and PRASA %90 and %10 liable respectively for Roberto's death. Roberto's siblings, Plaintiffs Sarah Rosa (hereinafter "Sarah") and Rafael Rosa (hereinafter Rafael") were each awarded $750,000 in damages. The jury found that Nogama breached its duty of care towards Roberto by not taking the proper safety precautions with the hole in the chlorine room. The jury gave greater weight to Plaintiffs' evidence that the plywood covering the hole was not securely fastened to the chlorine room floor and that as a result, Roberto fell to his death after stepping into the forty foot drop. The jury also credited Plaintiffs' evidence on damages, consisting of the Plaintiffs' own testimony as well as that of an expert witness, that Roberto's siblings suffered damages well beyond the grief normally expected after the death of a loved one.

Defendant Nogama now moves the Court for Judgment as a Matter of Law, or, in the alternative, for a new trial. If all else fails, Defendant pleads for a remittitur. Plaintiffs have opposed.

**I.      MOTION FOR JUDGMENT AS A MATTER OF LAW**

Civil No. 09-1149 (JAG)                                                          4

## STANDARD OF REVIEW

Rule 50 of the Fed.R.Civ.Proc. allows a party during a jury trial to move the Court for entry of judgment as a matter of law. Such a motion may be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue…." Fed.R.Civ.P. 50(a)(1). If the Court denies the motion, then "[n]o later than 28 days after the entry of judgment … the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed.R.Civ.P. 50(b). "[T]he party renewing a motion for judgment as a matter of law pursuant to Rule 50(b) 'is required to have moved for judgment as a matter of law at the close of all the evidence.'" Taber Partners I v. Insurance Co. of North America, Inc., 917 F.Supp. 112, 115 (D.P.R. 1996) (quoting Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 758 (1st Cir.1994)).

It has long been established that whether the evidence presented at trial is sufficient to permit a court to enter judgment as a matter of law is solely a question of law to be determined by the trial court. 9B Wright and Miller, Federal Practice and Procedure § 2523 (3d ed. 2008). Granting such motion deprives the party opposing it of a determination by a

Civil No. 09-1149 (JAG)                                                          5

jury and, therefore, it is to be granted cautiously and sparingly. Id. at § 2524. "Even in the best circumstance, the standards for granting a motion for judgment as a matter of law are stringent." <u>Rivera Castillo v. Autokey, Inc.</u>, 379 F.3d 4 (1st Cir. 2004). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party." Id.

In reviewing a motion for judgment as a matter of law "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133 (2000). The court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Id. (citations omitted). A motion under Rule 50(b) will not be granted unless "the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." <u>Rivera Castillo</u>, 379 F.3d at 10-11 (citing <u>Keisling v. SER-Jobs for Progress, Inc.</u>, 19 F.3d 755, 759-60 (1st Cir. 1994). Pursuant to Fed.R.Civ.P. 50, Nogama's "motion for judgment

Civil No. 09-1149 (JAG)                                                6

cannot be granted unless, as a matter of law, [Plaintiff] failed to make a case..." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

**ANALYSIS**

Defendant Nogama argues that Plaintiffs have not proffered sufficient evidence on any of the elements of this tort suit. In Defendant's own words, it argues that all evidence demonstrates that Nogama properly secured the hole before relinquishing control of the chlorine room to PRASA on November 11, 2008; that it had no legal duty regarding the safety of the hole after it left the chlorine room on November 11, 2008; that any alteration to the safety precautions left in place by Nogama must have been carried out by PRASA personnel after Nogama left the area, thus constituting an intervening cause that relieves Nogama from any liability; and that there was insufficient evidence to permit a conclusion that Roberto fell through the opening made by Nogama, and not through another among several holes in the area.

There is sufficient evidence for a reasonable jury to find that Nogama did not properly secure the plywood covering the hole in the chlorine room. Though Nogama claims that the plywood was anchored to the floor with cement nails, Javier Matías, Roberto's direct supervisor at PRASA, testified otherwise. Javier Matías, who observed the hole shortly after Roberto's

Civil No. 09-1149 (JAG)                                                7

disappearance, testified that there were no nail holes on the cement floor surrounding the hole. (Tr. 8/10/2010, 46:13). Ángel Olmo, another PRASA employee who later that day was able to observe the area, also testified that there were no nail holes on the floor surrounding the hole. (Tr. 8/10/2010 124:25, 127:7, 9). The testimony of either one of these men, if afforded credibility, would have been legally sufficient to find for the Plaintiffs on this point. Finally, the clearest picture of the plywood covering the hole that was brought into evidence, shows a nail hole in but one of the four corners of the plywood. (Joint Exhibit I).

The duty to exercise due care comprises the obligation to foresee and to prevent the occurrence of damages which may be reasonably foreseen. Elba v. U.P.R., P.R. Offic. Trans. 1990. It was reasonably foreseeable that in an area where PRASA employees frequently carried out work tasks, a worker, unaware of the danger below, might attempt to move the plywood in order to more easily maneuver inside the chlorine room. Had it taken this into account, Nogama would have taken more stringent security measures with the hole and perhaps, its duty of care would have ended when its employees left the chlorine room. But this was not the case. For this same reason, the proposition that PRASA employees dismantling the muñeco once Nogama left the chlorine

Civil No. 09-1149 (JAG)                                                     8

room constituted an intervening cause, is untenable as a matter of law. There can be no intervening cause, where the event alleged to break the chain of causation is foreseeable. <u>Ginés v. Autoridad de Acueductos y Alcantarillados</u>, 86 D.P.R. 518, 523 (1962).

Finally, there is sufficient evidence for a reasonable jury to conclude that it was the hole in the chlorine room, and not any other opening in the treatment plant, that led Roberto to his death. Ángel Olmo testified that when he arrived at the chlorine room area in search of Roberto, he found Roberto's fingerlift, loaded with a full chlorine cylinder, parked at the chlorine room entrance, (Tr. 8/10/2011, 100:10), near the uncovered hole in the ground. (Tr. 8/10/2011, 113:21). Roberto however, was nowhere in sight. Ángel Olmo was the first to conjure the obvious inference; Robert had fallen through the hole. (Tr. 8/10/2011, 114:10). The jury reasoned likewise, and this Court will not disturb that conclusion.

For the aforementioned reasons, the Court denies Defendant's Motion for Judgment as a Matter of Law.

## II.  ALTERNATIVE MOTION FOR NEW TRIAL AND/OR REMITTITUR PURSUANT TO RULE 59 OF THE FRCP

**STANDARD OF REVIEW**

Rule 59 allows the Court on motion to order a new trial after a jury trial, "for any reasons for which a new trial has heretofore been granted in an action at law in federal court…". Fed.R.Civ.P. 59(a); See also Oriental Financial Group, Inc. v. Federal Insurance Company, Inc., 598 F. Supp. 2d 199 (D.P.R. 2008).  The motion for a new trial may invoke the discretion of the Court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law stemming out of the alleged substantial errors in admission or rejection of evidence or instructions to the jury. Montgomery Ward & Co. V, Duncan, 311 U.S. 243, 251 (1940).

The Court may grant a new trial although it has denied the entry of judgment as a matter of law under Fed.R.Civ.P. 50, China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc., 856 F.Supp. 856, 862 (D.Del.1994), or even when substantial evidence supports the jury's verdict, Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994). "But this does not mean that the district court should grant a motion for new trial simply because the court would have come to [a] different conclusion." 11 James Wm. Moore, Moore's Federal Practice 3D, 12 § 59.13[2][a] at 59-44 (2003).  Instead, a new trial "should only

Civil No. 09-1149 (JAG)                                                  10

be granted where a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.'" Smith v. Delaware Bay Launch Service, Inc., 842 F.Supp. 770, 778 (D.Del. 1994) (quoting Cudone v. Gehret, 828 F.Supp. 267, 269 (D.Del. 1993)). A trial court "may set aside a jury's verdict and order a new trial only if the verdict is so clearly against the weight of the evidence as to amount to manifest miscarriage of justice." Rivera Castillo, 379 F.3d at 23 (citing Federico v. Order of Saint Benedict in Rhode Island, 64 F.3d 1, 5 (1st Cir. 1995). Courts are not allowed to substitute their view of the evidence for the verdict reached by the jury. Id. at 24.

## ANALYSIS

Defendant Nogama also argues that the Jury's apportionment of liability of %90 against Nogama is clearly against the weight of the evidence and that a new trial is thus required. We find it is not.

Nogama avers that the evidence at trial established that before Roberto's accident, Nogama left in place a five security point muñeco covering the hole in the chlorine room; that PRASA employees partially dismantled the muñeco by removing the mesh and ladder; that PRASA supervisors allowed their employees to remove some of the muñeco's safety measures; that Nogama was

never notified that the muñeco had been tampered with; that after November 11, 2008 and on the day of the accident it was PRASA who had control of the chlorine room, and; that it was PRASA, Roberto's employer, who had the duty to provide Roberto with a safe working environment.

The weight of the evidence supports a jury finding that the safety measures left covering the hole by Nogama were, to say the least, inadequate given the danger below. The mesh and ladder were not attached to the plywood covering the hole; these two safety elements were more cosmetic than prophylactic. The relevance of the muñeco's compliance with OSHA regulations, though a heated topic throughout the testimony of expert witness Manuel Ray, is largely overstated. Compliance with safety regulations does not relieve a party of liability where a higher standard of care is expected of the reasonable and prudent man. López v. Porrata Doria, 169 D.P.R. 135, 159 (2006). What the jury probably found relevant, and had good reason to, was Engineer Manuel Ray's expert testimony that given the extreme danger involved, he would have covered the hole with a steel plate secured to the floor with nuts and washers. (Tr. 8/11/2010 32:4-13). Héctor Vega, project manager for Nogama, also testified, though in more general terms, that a steel plate was a safer choice of material. (Tr. 8/13/2010 39:7-13). But even

beyond the less than best choice of material to cover the hole, is the fact that the weight of the evidence clearly establishes that the plywood was not attached to the floor. Not only did Plaintiff's witnesses Javier Matías and Ángel Olmo testify to this, but Héctor Vega himself saw a Nogama employee attempt to hammer a cement nail through the chlorine room floor shortly after the accident, only to have the nail bend and not go through. (Tr. 8/13/2010 49:4-13). Furthermore, Engineer Evelio Agustín, project manager on behalf of PRASA and also a witness for the Defendant, admitted that he could not say whether or not the plywood placed over the hole was attached to the chlorine room floor. (Tr. 8/13/2010 81:8). Finally, Samuel Jiménez, the project foreman for Nogama, who was personally involved in placing the safety measures in the chlorine room, initially testified that he could not recall whether nails had been driven through all four corners of the plywood. (Tr. 8/13/2010 11:18). Then, while being confronted with a picture of the plywood used to cover the hole which shows only one nail hole on the plywood (Plaintiff's Exhibit 7), Jiménez was asked again whether the plywood had been nailed to the cement. He answered and repeated that the instructions were to fasten the plywood in the corners. (Tr. 8/13/2010 12,13). The lack of a straight "yes" or "no" answer, coupled with the other witnesses' testimony may have led

Civil No. 09-1149 (JAG)                                                13

the jury to discredit Jiménez's testimony, for what little value it may have had.

Defendant Nogama's arguments that PRASA should be found more at fault because it was PRASA employees that tampered with the muñeco, and Nogama was not notified of this, are not entirely unreasonable. They are however unavailing. It was Nogama who opened the hole in the chlorine room and failed to take the measures necessary to protect others from all reasonably foreseeable damages that might arise from the inherent danger presented by the hole. Elba v. U.P.R., P.R. Offic. Trans. 1990.; Ginés v. Autoridad de Acueductos y Alcantarillados, 86 D.P.R. 518, 524 (1962). As previously discussed, it was entirely foreseeable that workers would attempt to move the Muñeco in order to more easily maneuver within the chlorine room. Furthermore, this legal premise takes special relevance in the case before us, considering the fact that Héctor Vega, Defendant's own witness, conceded that the ladder and mesh placed on top of the plywood would have been entirely unnecessary had they used a fixed metal plate to cover the hole. (Tr. 8/13/2010 39:5-21). Engineer Manuel Ray was also of the opinion that the appropriate choice of cover for the hole was not plywood, but a fixed metal plate. (Tr. 8/11/2010 32:4-13).

Civil No. 09-1149 (JAG)                                               14

The Court concedes that PRASA also owed a duty of care to Roberto to provide him with a safe working environment. The jury apparently found that PRASA, a water treatment agent not learned in construction work, discharged the greater part of that duty by employing Nogama, an experienced construction company, to open the hole in the chlorine room, carry out the necessary works, and afterwards, secure the aperture safely. If Nogama, the expert in construction safety, thought the plywood to be sufficient a safety measure, why would PRASA second guess? Though the apportionment of liability of %90 percent against Nogama and %10 to PRASA may seem misplaced to some, the jury thought it appropriate. More importantly, it is not against the weight of the evidence, Federico v. Saint Benedict, 64 F.3d at 5 (1st Cir. 1995).

Defendant Nogama also argues that more fault should be attributed to Roberto because he assumed the risk of injury when he moved the plywood panel. This argument is not implausible. But considering the fact that when Roberto arrived at the chlorine room he may have only encountered a piece of plywood with a faded warning that what was not easily readable (Plaintiff's Exhibit 7; testimony of Héctor Vega 8/13/2010, 51:30), he had no reason to know that attempting to move the panel would plunge him to his death. The Court remains

unpersuaded as to this proposition as well; the jury's finding stands.

Finally, Defendant Nogama argues in the alternative that the evidence on damages is insufficient to sustain the jury award of $750,000 for each of Roberto's two siblings. We disagree. An award of damages can only be remitted if found "so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." Koster v. Trans World Airlines, 181 F.3d 24, 34 (1st Cir. 1999). Plaintiff Sarah testified of her close relationship with Roberto, (Tr. 8/11/2010, 93:1-10, 96:1-25, 97:1-11), and as to her damages upon learning of her brother's death and the circumstances surrounding it. Sarah testified that she and Roberto spoke of upcoming joint travel plans the evening before Roberto's death, and that Roberto's son was expected for dinner the following evening at her home.(Tr. 8/11/2010, 85:4-10, 97:17-22). She testified of how she fainted upon learning of Roberto's death, (Tr. 8/11/2010, 89:9), and of several nervous reactions that ensued afterwards. (Tr. 8/11/2010, 99:16-21). She spoke of the devastation felt as a reaction to the macabre state of her brother's remains, (Tr. 8/11/2010, 91:7-12), and of her sustained emotionally depressed state following Roberto's demise. (Tr. 8/11/2011, 100:5-12). Plaintiff Rafael testified of

Civil No. 09-1149 (JAG)                                                          16

his close relationship to Roberto, (Tr. 8/12/2010, 6:17), how he broke into tears upon learning of his brother's death, (Tr. 8/12/2010, 6:20), and how his blood pressure problems have aggravated ever since. (Tr. 8/12/2010, 7:9-11). Rafael, who suffers from cerebral palsy, also testified of how he grew particularly close to his brother and looked up to Roberto, who throughout his youth looked to accommodate his incapacity. (Tr. 8/12/2010, 8, 9:8-11). Rafael also testified of his children's close relationship with Roberto. (Tr. 8/12/2010 9:15-23). Plaintiffs also proffered the testimony of expert witness Dr.García, who rendered a report on Plaintiffs' mental and emotional damages. Dr. García, an experienced clinical psychologist, testified of Roberto's close childhood bond to Plaintiff Sarah, (Tr. 8/12/2010, 103:21-25, 104:1-23), and to Plaintiff Rafael. (Tr. 8/12/2010, 106:1-15). Dr. García also testified of how Plaintiffs have been attempting to cope with the traumatic grief that afflicts them as a result of Roberto's mysterious, sudden and gruesome death. (Tr. 8/12/2010, 110:19-22). Dr. García spoke specifically of Plaintiff Sarah's obsessive and haunting thoughts regarding the manner in which Roberto died, (Tr. 8/12/2010, 112:14-20), and of how Plaintiff Rafael also suffers from traumatic grief from the circumstances surrounding the loss of his brother and childhood caretaker.

Civil No. 09-1149 (JAG)                                                     17

(Tr. 8/12/2010, 117:8-25). Finally, Dr. García testified as to the need of both Plaintiffs for psychiatric attention to treat the depression and anxiety that they both suffer as a result of their brother Roberto's mysterious, unexpected and ghastly death. (Tr. 8/12/2010, 118).

The defense offered no evidence on damages, to rebut that of Plaintiffs'. Plaintiffs Sarah and Rafael were not cross-examined. Dr. García's cross-examination covered the methodology of the Doctor's examination of the Plaintiffs, the dates of the interviews and the compensation received by Dr. García, but did not go to the substance of his testimony. The evidence of damages is more than sufficient; it is abundant. This Court has seen lower awards for damages in wrongful death suits, but the amount here is far from what would be proper for us to remit. Whitfield v. Melendez-Rivera, 431 F.3d 1, 15-16 (1st Cir. 2005). We will not disturb the jury's conclusion here either.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Nogama's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial and/or *Remittitur* Pursuant to Rule 59 of the FRCP.

IT IS SO ORDERED.

Civil No. 09-1149 (JAG)                                                      18

    In San Juan, Puerto Rico, this 6th of July, 2011.

                                                <u>S/ Jay A. García-Gregory</u>
                                                JAY A. GARCÍA-GREGORY
                                                United States District Judge